ALTON CARLIN *vs.* ELIZABETH P. HARRIS ET AL.

*Restraint Upon Alienation of Income by Life Tenant—Forfeiture—Remanding Cause Without Affirming or Reversing Decree.*

A testator devised a double brick house to his daughter for life, with certain limitations over as to the different sides of the house. He also provided that if the life tenant "shall by way of anticipation, alien, charge, mortgage or transfer, by any mode, the income arising from the real estate, then and in that event the above devise in her behalf shall be forfeited and void." The life tenant made a lease of one side of the house for twenty-five years for a lump sum of money. *Held,* that this lease, relating to only part of the property, did not work a forfeiture of the life tenant's estate, since under the will the life estate in the whole property is to be forfeited in case the life tenant aliened or charged the income from the whole property and not in case of an alienation of a portion of the income.

The life tenant of certain real estate and the remaindermen were parties to a bill in equity alleging that the taxes on the property were in arrears, that it was in need of repairs, that the life tenant was unable to pay these expenses and that it would be to the benefit of all the parties in interest to have the property sold. These allegations were denied by some of the remaindermen. Upon appeal from a decree directing a sale to be made, the record contained no evidence, and the agreement of facts did not relate to this matter. *Held,* that since the allegations

of the bill should be sustained by evidence, the cause will be remanded without affirming or reversing the decree to the end that the Court below may determine from evidence to be taken whether a sale of the property would be of advantage to the parties concerned and in that event direct such sale, the costs to be paid as ordered by the decree to be made.

Appeal from the Circuit Court for Frederick County (Mc-SHERRY, C. J., and MOTTER, J.)

The cause was argued before FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.)

*Wm. P. Maulsby, Jr.*, and *Geo. A. Pearre, Jr.*, for the appellant.

*Frank L. Stoner*, for the appellees.

BOYD, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Frederick County directing the sale of a property in Frederick City, under a bill alleging that it is in need of repairs, that taxes have accrued and the life tenant has no means with which to satisfy them and that it will be to the benefit of all the parties interested to have the property sold. John Carlin by his last will and testament left to his executors, John T. Carlin and James S. Carlin, his "three-story double brick house on the west side of North Market street   *   *   * now in the occupancy of Jonathan Staley and George W. Norris," for the sole use and benefit of his daughter, Elizabeth P. Harris, during her natural life. The devise proceeds in the following language "and upon the further *trust*, to pay to said Elizabeth P. Harris, during her life, and for her own sole, separate and exclusive use and benefit her receipt alone to be a sufficient discharge of said executors. The rents arising from the renting of said double three-story brick house to be collected by my daughter, Elizabeth P. Harris, wife of Solomon Harris, subject to the following express conditions: " that if she "shall by way of anticipation alien, charge, mort-

gage, or transfer by any mode the income arising from the real estate then and in that event the above devise and bequest in her behalf shall be forfeited and void. And I then devise and bequeath the double three-story brick house to the children of the said Dr. James S. Carlin by his first wife to be equally divided between them share and share alike or their heirs, if they severally attain lawful age at the death of the said Elizabeth P. Harris, wife of Solomon Harris, should the aforesaid double three-story house and lot devised and bequeathed to her for life not be forfeited according to the provisions of this will, I then give, devise and bequeath the aforesaid double three-story house and lot to John T. Carlin my son and James S. Carlin my sons children by his first wife, that is, John T. Carlin is to receive that portion of the double house now occupied by Jonathan A. Staley and I devise and bequeath that portion of the double house now occupied by George W. Norris to the children of son, Dr. James S. Carlin, by his first wife," etc.   By a codicil he devised the part of the house occupied by Norris, "it being north half of said double house" *exclusively* to his grandson, William T. Carlin, the son of James S. Carlin, in fee after the death of his daughter, Elizabeth P. Harris.

It will be observed that the testator left his "three-story double brick house" to his executors *in trust* for his daughter, for life, upon the condition that the devise for her benefit should be forfeited if she did what was therein prohibited, and in that event "the double three-story brick house" was to go to the children of James S. Carlin by his first wife, and if not forfeited, the "Staley portion" of the house, as we may designate it, was to go to John T. Carlin and the "Norris portion" to the children of James S. Carlin—afterwards changed by the codicil to William T. Carlin alone.   A forfeiture would therefore result not only in depriving Mrs. Harris of the property during her life, but in excluding John T. Carlin from the Staley portion, and instead of giving William T. Carlin the whole of the Norris portion, in making all of James S. Carlin's children remaindermen as to both sides of the double house, al-

though he took the trouble to make a codicil to his will to give the Norris portion "exclusively" to Wm. T.

The children of James S. Carlin filed an answer in which they expressly denied each and every allegation in the sixth paragraph of the bill (which is the one alleging it would be to the advantage of all parties interested to have the real estate sold and the proceeds invested) and alleged that the devise to Elizabeth P. Harris had become forfeited and void. John T. Carlin, one of the executors, by his answer admitted all of the allegations of the bill and consented to the passage of a decree as prayed. James S. Carlin, the other executor, demanded full proof of the allegations in the sixth paragraph, and referred to a lease executed by the executors and Mrs. Harris to one Edward J. Hudson, of the north side of the double house, and left to the Court to determine whether the execution of the lease by Mrs. Harris worked a forfeiture of her life estate. This lease was executed on the 17th of June, 1901, and demised to Hudson the northern portion of the double house for the term of twenty-five years and contained a covenant for a renewal for another term of fifteen years. The rent reserved is twenty-five cents per annum and the lessee covenanted to pay the taxes. The consideration for the lease is stated to be $325, the receipt of which is acknowledged and the payment of the rent. In an agreement of facts filed in the case it is admitted that the $325 was accepted and received by Mrs. Harris on the date of the execution of the instrument, that the house was then of the clear yearly rental value of $100 and that it was transferred on the tax-books to Edward J. Hudson who has since paid all taxes and charges thereon.

The argument in this Court was mainly addressed to the question whether the lease worked a forfeiture of the life estate of Mrs. Harris, and the opinion of the Court below shows that that was the question presented to and passed on by it. If there be a forfeiture, as contended by the appellants, then manifestly the leasehold interest of Edward J. Hudson would likewise be forfeited, just as it would be terminated by the

death of Mrs. Harris, for it is very clear that neither the executors, nor Mrs. Harris could demise the property for any time beyond such as she had an interest in it.    The lease only includes what we have above designated as the "Norris" portion of the double house, while this bill was filed for the sale of the "Staley" portion—the lease speaks of the "northern portion" of the double house, which is shown by the codicil to the will to be the side occupied by Norris, while the bill seeks to sell the part described as "being occupied by Jonathan Staley."

The testator said that if Mrs. Harris "shall by way of anticipation alien, charge, mortgage or transfer by any mode *the income arising from the real estate*, then and in that event the above devise and bequest in her behalf shall be forfeited and void, and I then devise and bequeath the double three-story brick house to the children of the said Dr. James S. Carlin," and he speaks in the devise and in reference to the collection of rents of the "double three-story brick house." But it was a *double house* and was occupied at the date of the will by two persons and, if there be no forfeiture, the testator devised one side (or portion, as the will calls it), to one person and the other side to another person, after the death of Mrs. Harris.    It is much more reasonable to suppose that he did not intend to provide for a forfeiture of *either side* unless Mrs. Harris should, by way of anticipation, alien, charge, mortgage or transfer by some mode the income arising foom *both sides* than to hold that he intended a forfeiture of *both sides* if she thus disposed of the income of *one side* of the house.  He does not in terms impose a forfeiture for disposing of *part* of the income, but for disposing of "*the income arising from the real estate*" in one of the ways mentioned.    Indeed it might be impossible for her to discharge her duty as a life tenant without in some measure charging some part of the income.    If she had no other means, it might be necessary to let the tax collector collect the rent from month to month, in payment of the taxes, until they were paid, to avoid a sale of the property, or it might be absolutely necessary for the preservation of the property to charge the income with liability for repairs.

A new roof might be required, the house might be partially destroyed by fire, and other contingencies might happen that would make it necessary, for the benefit of the remaindermen as well as herself, to transfer or charge some portion of the income, and it could scarcely have been within the contemplation of the testator that in such event her interest in the *whole* income should be forfeited.

At the argument the question whether the provisions in the will created a condition subsequent or conditional limitation was much discussed—the appellants contending that it was the latter—and therefore there was *ipso facto* a forfeiture, without any act of the remaindermen.   Although we are not unmindful of the distinction made between conditions subsequent and conditional limitations and it was said in *Gough* v. *Manning*, 26 Md. 347, that "The general rule, that equity never enforces a forfeiture, has never been applied to cases of conditional limitations, such as the present, when the question is whether the proviso operates as a condition subsequent divesting the prior estate, or as a limitation over," yet we must also bear in mind that forfeitures are not favored in equity and provisions for forfeitures should be strictly construed, when the intent is doubtful, against those relying on them.   When there is no question about the proper construction to be placed on language used, Courts must be governed by it, if not contrary to some rule of law, but when, as in this case, a testator uses an expression capable of two interpretations, which if construed one way will cause a forfeiture of interests in property, and if construed the other way will avoid that, the latter is more in accord with principles governing Courts of equity.   If Mr. Carlin intended that there should be a forfeiture if Mrs. Harris made the disposition, forbidden by him, of *a part* of the income from this property, it would have been very easy to have so expressed himself.   As he did not, it is not putting a strained construction on his language to say that he only meant to forfeit her life estate in the *whole property*, if she aliened, charged, etc., the *income from the whole property*.   In the case of *Roosevelt* v. *Hopkins*, 33 N. Y. 81,

there was a lease before the Court for construction which provided that the lessee should not "demise, sell, underlet or assign over the said premises to any person or persons whatsoever, or for any term or time whatsoever." The firm composed of the lessees was dissolved by the withdrawal of one member and the business was conducted by the remaining partners and others. The new firm underlet *a part* of the premises. The Court said "They neither demised, sold, underlet nor assigned the *entire* property embraced in the lease. They were not prohibited from sub-letting *portions* of the premises; and the exercise of this right, therefore, gave no cause of action to the plaintiff." So in *Hasbrook* v. *Paddock*, 1 Barb. 635, it was held that "The statute declaring that the diversion or use of saltlots, for other purposes than the manufacture of salt, should work a forfeiture of the estate of the lessee, and divest him of his interest therein, does not apply to the diversion of *a part* of a lot. It only prohibits the diversion and use of *an entire* lot, for purposes foreign to the object of the lease."

Of course we are aware that those were cases determined by the law applicable to landlord and tenant, and that "covenants against sub-letting, like covenants against assignments, are to be strictly coustrued against the lessor." 18 *Am. & Eng. Ency. of Law*, 680. But we cite them as we might others to show that such construction as we give to this provision of the will is not without precedent. In the part of the will where the testator undertook to provide for a forfeiture he not only referred to *the whole property* but to *the whole income*, and, as we have indicated above, if he intended that his daughter's interest in the *whole property* should be forfeited, it was in the event that she made the prohibited disposition of *the whole income*, and it did not in our opinion intend to deprive her of both portions of the double house because she made a lease such as the one in this record. We are therefore of the opinion that the lease cannot for this reason be relied on to defeat the relief sought by the plaintiff's bill, without deeming it necessary to determine whether the act of Mrs. Harris in joining in the lease and receiving the $325.00 would

be within the prohibition of the provisions of the will, if a construction contrary to the above had been given, and it had been held that an assignment of the income from one side of the house would have forfeited that from the other side.

Having reached that conclusion we are relieved of the discussion of other matters suggested at the argument. We are confronted, however, with a difficulty which we find nothing in the record to explain. As we have already said, the children of James S. Carlin expressly deny the allegations of the bill, that it would be for the benefit of all the parties in interest to have the real estate sold and the proceeds invested, and James S. Carlin, one of the executors, demanded in his answer full proof of them. The record before us does not contain any evidence, and the "Agreement of Facts" does not refer to this question, but the decree appealed from directs the sale of the property. The decree was not attacked in this Court for lack of testimony to sustain it, and the opinion of the Court below does not refer to that subject. It was possibly treated as conceded, but as there is nothing in the record to inform us and as there ought to have been sufficient evidence to sustain the allegations of the bill, in the absence of admissions of the parties in interest, we have concluded that the proper course to pursue is to remand the case under sec. 36 of Art. 5, without affirming or reversing the decree, in order that such further proceedings may be taken as shall be necessary and, if it then appear to the Court below that it be advantageous to the parties concerned, a new decree can be passed for the sale of the property, as authorized by sec. 198 of Art. 16 of the Code. Under the established practice the costs, including those in this Court, are to be disposed of by the Court below. *Miller's Equity Procedure*, 427, and cases cited.

> *Cause remanded, without affirming or reversing the decree, for further proceedings in accordance with this opinion.*

(Decided November 17th, 1904.)